COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Retired Judge Kulp[*]
Argued at Richmond, Virginia


DONALD J. PONTON

MEMORANDUM OPINION[**] BY
v.    Record No. 0709-99-2          JUDGE ROBERT J. HUMPHREYS
                                    AUGUST 22, 2000
CHERYL J. PONTON


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge

Homer C. Eliades (Eliades and Eliades, on
brief), for appellant.

Charles W. Beddow (Beddow, Marley, Trexler &
Fitzhugh, on brief), for appellee.


Donald J. Ponton (husband) appeals a February 22, 1999

order of the circuit court mandating that he pay his former

wife, Cheryl J. Ponton (wife), spousal support arrearage from

January 1, 1996. For the reasons that follow, we reverse the

order of the circuit court.

I.  Background

In 1994, wife petitioned the Juvenile and Domestic

Relations District Court ("JDRC") of Chesterfield County for

_____

[*] Retired Judge James E. Kulp took part in the consideration
of this case by designation pursuant to Code § 17.1-400,
recodifying Code § 17-116.01.

[**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

child and spousal support from her estranged husband.  With
regard to the spousal support, the JDRC ordered husband to pay
wife $200 per month.  Wife appealed this order to the circuit
court, which granted her spousal support of $375 per month by
its order of November 10, 1994.  Subsequently, on January 31,
1995, the circuit court transferred all matters pertaining to
"custody, visitation and child support of the minor children and
spousal support to the Juvenile and Domestic Relations [Court]"
pursuant to Code § 20-79(C), and struck the matter from its
docket.

Approximately one year later, on February 8, 1996, wife and
husband entered into a written Separation and Property
Settlement Agreement ("Agreement") which provided the following
regarding spousal support:

> 21.  Support and Maintenance of Wife:
> Wife's current support and maintenance by
> Husband's payments by order of Court are set
> at $375.00.  Beginning with January 1, 1996
> the support and maintenance payments by
> Husband to Wife shall be reduced to $200.00
> monthly with Husband's payments to continue
> to the last month Wife is required to pay a
> monthly payment of $200.00 to NationsBank
> . . . .
>
> Following payment by Wife of her
> obligation herein to pay NationsBank . . .
> Husband's obligation to pay support and
> maintenance to Wife shall be reduced to
> $1.00 annually . . . .

The Agreement also stated the following:

> 4.  Subsequent Divorce:  Husband and Wife
> anticipate a divorce.  Upon presentation to

-

the Court of a sketch for a final decree of
divorce, Husband and Wife agree to request
the Court to affirm, ratify and incorporate
this Agreement . . . into said decree. . . .
Husband and Wife agree to be bound hereby in
any event.

Husband later filed for divorce in the circuit court.  On

June 20, 1996, husband was granted a divorce a vinculo

matrimonii from wife.  The decree entered by the circuit court

on that date stated the following, in pertinent part:

It is further appearing to the Court
that the parties have entered into a[n]
. . . Agreement dated the 8th day of
February, 1996.

It is therefore ORDERED that the Court
doth affirm, ratify and incorporate into
this Decree by reference hereto, the . . .
Agreement between the parties dated February
8, 1996, pursuant to § 20-109.1 . . . .

The Juvenile and Domestic Relations
Court for the County of Chesterfield having
exercised jurisdiction over the custody,
visitation and support and maintenance of
the parties' infant children, plus spousal
support for defendant, this Court exercises
no jurisdiction over those issues.

And it appearing that nothing remains
to be done in this matter, the same is
stricken from the docket of this Court
. . . .[1]

In accord with the decree of divorce and the Agreement,

husband began paying wife $200 per month, instead of $375 per

month, on January 1, 1996.  In 1998, wife petitioned the JDRC

---

[1] There was no § 16.1-244(A) hearing held in the divorce
matter.

-

for an order calculating the amount of spousal support payments actually due, pursuant to the orders entered over the previous years.[2]  Specifically, wife argued that the circuit court had no jurisdiction over matters of spousal support when it entered the divorce decree.  Accordingly, she claimed that the correct amount of spousal support was $375 per month, as first ordered by the circuit court, and that husband owed her an arrearage of support of $175 per month, dating back to January 1, 1996 when he began paying the lower support payment.  Husband also filed a motion to terminate spousal support payments due under the Agreement and decree, claiming that certain obligations under the Agreement had been met and that spousal support was no longer required under the Agreement and decree.  Both motions were denied by the JDRC.

Wife appealed the decision to the circuit court.  After a de novo hearing, the circuit court found that the provisions of the Agreement regarding spousal support were not incorporated into the final decree of divorce and ordered husband to pay wife spousal support arrearage in the amount of $175 per month from January 1, 1996.  It is this order of the circuit court which we review on appeal.

---

[2] Wife also asked the JDRC for an increase in child support payments, which was ultimately granted by the circuit court but is not a subject of this appeal.

-

## II.  Analysis

Code § 16.1-244(A) specifically empowers the circuit court, concurrently with JDRC, "to determine spousal support in a suit for separate maintenance.  However, when a suit for divorce has been filed in a circuit court, in which . . . spousal support is raised by the pleadings and a hearing is set by the circuit court on . . . such issue . . . within twenty-one days of the filing, the juvenile and domestic relations district courts shall be divested of [jurisdiction] . . . ."  By its express language, this statute provides for a divestiture of jurisdiction of the JDRC in certain instances.  However, there is no language suggesting that the circuit court can also be divested of jurisdiction.

In light of the above, wife's argument that the circuit court lacked jurisdiction to act with regard to spousal support matters lacks merit.  In fact, this Court has held that even when a circuit court transfers matters to the JDRC pursuant to Code § 20-79(c), subsequent to a suit for divorce under Code § 16.1-244(A), "[it] retains . . . continuing jurisdiction over those matters."  Crabtree v. Crabtree, 17 Va. App. 81, 87, 435 S.E.2d 883, 887 (1993).  Moreover, wife erroneously relies on Calfee v. Calfee, 29 Va. App. 88, 509 S.E.2d 552 (1999), to support her argument.  In Calfee, this Court recently reiterated that "[a] decree or order of the circuit court emanating from a 'suit for divorce,' after displacing the jurisdiction of the

-

[JDRC], may be transferred to such court for enforcement or related matters, thereby restoring concurrent jurisdiction in both courts, without impairing the properly invoked exercise of jurisdiction by the circuit court over the transferred issues." Id. at 94-95, 509 S.E.2d at 555.

In addition, the circuit court's statement in its order of June 20, 1996 that it "exercise[d] no jurisdiction over issues [of spousal support]" is without consequence. The court's very actions, as well as its 1996 order, are contrary to its statement pertaining to jurisdiction. The circuit court very clearly exercised jurisdiction over the parties' Agreement and specifically approved and incorporated the entire Agreement into the divorce decree, including the provisions regarding spousal support.

In fact, pursuant to Code § 20-109, the circuit court was bound by statute to recognize and follow the Agreement. That section provides the following, in pertinent part:

> if a stipulation or contract signed by the
> party to whom such relief might otherwise be
> awarded is filed . . . no decree or order
> directing the payment of support and
> maintenance for the spouse, suit money, or
> counsel fee or establishing or imposing any
> other condition or consideration, monetary
> or nonmonetary, shall be entered except in
> accordance with that stipulation or
> contract. . . .

In addition, this Court has found that "[this] statute . . . expressly permits a court to incorporate only selected

-

provisions of the agreement if it so desires.  [However,] [a]lthough incorporation in whole or in part is not mandatory . . . [where] the divorce decree incorporated the property settlement agreement . . . without <u>specific</u> exception[,] . . . the language used . . . [would serve] to incorporate the entire property settlement agreement without exception."  <u>Mackie v. Hill</u>, 16 Va. App. 229, 232, 429 S.E.2d 37, 38-39 (1993) (emphasis added).  The circuit court in this case clearly incorporated the entire Agreement into the decree, and it set forth no specific limitations to indicate a contrary intention.

Wife's argument that Code § 20-109 cannot apply to this case because, as of 1994, when she filed her original petition for support in the JDRC, the code section did not contain a reference to Code § 16.1-241(L), is also erroneous.  Code § 16.1-241(L) addresses jurisdiction of the JDRC, as well as the circuit courts in suits for separate maintenance.  The case at issue is not a suit for separate maintenance, but a divorce proceeding pursuant to Code § 16.1-244(A).  Furthermore, the Supreme Court of Virginia has recognized that Code § 20-109 and § 20-109.1 "merely codified the <u>preexisting</u> power of a divorce court to incorporate a settlement agreement in a decree and to enforce it through its contempt power."  <u>Rogers v. Damron</u>, 23 Va. App. 708, 713-14, 479 S.E.2d 540, 543 (1997) (emphasis added).

-

Wife also contends that our consideration of this appeal on grounds of Code § 20-109 is barred based on the failure of the statement of facts to show that husband made this specific contemporaneous objection to the trial court's ruling. We conclude, however, that this appeal is not barred. Although the statement of facts submitted in lieu of the transcript contains no mention of any objection to the trial court's ruling on this basis, the final order of February 22, 1999, as signed by counsel for appellant, reads "Seen and objected to." Although counsel failed to include specific grounds for the objection, as is generally required by Rule 5A:18, the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection. Accordingly, we hold that we may consider the merits of appellant's assignment of error on this basis. See Mackie, 16 Va. App. at 231, 429 S.E.2d at 38.

Finally, and most importantly, we emphasize that in Virginia, property settlement agreements are contracts. "Incorporation [of these agreements by the court] does nothing more than allow the court to enforce the contract[s] through its contempt powers pursuant to Code § 20-109.1. [Incorporation] is not a prerequisite to the binding effect of the contract as between the two parties." Parra v. Parra, 1 Va. App. 118, 129, 336 S.E.2d 157, 163 (1985). Thus, even if not incorporated, it is clear that the Agreement is still enforceable as a contract, "[as] it has been recognized in Virginia that 'marital property

-

settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.'" Id. at 128, 336 S.E.2d at 162 (quoting Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)).

> To hold otherwise would not only fail to give full effect to the property division statutes, but also would fail to support Virginia's public policy in favor of prompt resolution of property disputes in divorce cases through voluntary court-approved agreements. If divorce litigants know that they may repudiate, with impunity, valid property settlement agreements in hopes of getting a better result from the court, or because they no longer wish to honor their commitments, the usefulness and validity of all such contracts will be lessened.

Parra, 1 Va. App. at 129, 336 S.E.2d at 163. We see no reason why the court should allow a party to avoid the consequences of a valid contract.

Accordingly, the decision of the circuit court is reversed and this matter is remanded for entry of an order in accordance with the terms of the parties' incorporated Agreement.

Reversed and remanded.

-